PER CURIAM.
The Pettrys appeal a final judgment denying the relief they sought based on their complaint naming the Pruitts and the First National Bank of Live Oak (“the Bank”) as defendants and seeking equitable subrogation to the holders of a mortgage which had been paid with certain funds, the imposition of a constructive trust upon the funds, and an accounting for the funds.
The sequence of events leading up to the filing of the complaint is rather complex. On January 22, 1975, the Pruitts, appellees here, sold certain property to the Pettrys, appellants in this case. The Pettrys assumed a mortgage held by the Bank and in addition gave a second mortgage to the Pruitts. On May 5, 1975, the Pettrys purchased a policy of fire insurance to cover the property and buildings, naming the bank as loss payable mortgagee. On June 1, 1975, the buildings located on the property were destroyed by fire. The Pettrys’ claim against the insurance company was denied and they filed suit against the insurance company. The insurance company defended alleging arson.
In October 1975 the Pruitts paid $5,547.38 on the mortgage held by the bank. On March 30, 1976, after the fire loss occurred, but before the dispute with the insurance company was concluded, the Pettrys recon-veyed the property to the Pruitts and the parties entered into a Real Estate Closing Statement and Agreement which provided as follows:
1. If Buyers [Pruitts] shall sell subject property at a bona fide sale for true value within period of one year, for a price less than the total price of this conveyance [$62,760.52], Sellers [Pettrys] shall reimburse Buyers for any difference between the hereinstated purchase price and the then selling price obtained by the Buyers.
2. Sellers’ liability to Buyers in accordance with preceding paragraph shall be limited to payment from the proceeds of an outstanding lawsuit by Sellers against American Motors Insurance Company for recovery for losses incurred as a result of a fire which occurred on the dwelling on the subject premises during the ownership by Sellers; and if there shall be no recovery, then the liability herein of the Sellers shall be deemed to be satisfied; or if recovery is less than the amount of the difference in prices, then the liability of the Sellers shall be limited to the amount recovered, less expenses of recovery.
3. If the Buyers herein do not sell the property within the stated period of one year, then there shall be no liability accruing to the Sellers hereunder.
4. It is agreed between the parties that this agreement shall not be construed to operate as an assignment of the Seller’s rights against said American Motors Insurance Company.
The Bank and the Pruitts had filed a separate suit against the insurance company and on May 30,1978, the Bank settled its claim with the insurance company for $31,-000.50. According to the stipulated statement of facts the proceeds of that settlement were disbursed as follows: $20,411.97 to Bank as loss payable mortgagee; $9,637.91 in attorney’s fees pursuant to contingent fee agreement with Pruitts; $86.75 *1117 for costs; and $863.87 retained by the Pruitts. Before this settlement occurred the Pettrys notified the Bank that they claimed entitlement to any proceeds the Bank might receive from the insurance company. Following the settlement the Pettrys filed the complaint for equitable subrogation, imposition of a constructive trust, and an accounting and the trial court denied relief.
Appellants argue that since they did not assign the insurance policy to the Pruitts, the Pruitts had no interest in the policy proceeds and should not have received any of the proceeds of the settlement which the insurance company reached with the bank as loss payable mortgagee.[1] The Pruitts argue that by virtue of the Real Estate Closing Statement and Agreement, the Pet-trys had agreed to reimburse them for the difference between the purchase price for the reconveyance, $62,760.52, and the proceeds of a subsequent sale, $33,000. The subsequent sale by the Pruitts to a third party occurred on September 27, 1978.
It is clear the Bank was entitled to the sum of $20,411.97, which was the amount due on its mortgage as of the date of settlement with the insurance company. The Bank was also entitled to a reasonable sum for attorney fees. Section 627.428, Florida Statutes. The sum of $2,000.00 appears to have been the amount paid the Bank’s attorney. Thus the Bank was entitled to retain $22,411.97.
As to the remaining $8,588.53, additional factors must be taken into account. The Pruitts paid the Bank $5,547.38 to apply on the mortgage. This occurred after the fire loss and before the settlement with the insurance company. The policy clearly, in the mortgagee clause, covered sums owed on the mortgage at the time of the loss. Though payment by the Pruitts may not technically give them the right to recover the amount paid by them, it does provide some insight in construing the Real Estate Closing Statement and in considering the equities of the case. This brings us to the very basic issue in this case. This agreement provides that if the Pruitts shall sell the property at a bona fide sale for true value “within a period of one year” for a price less than the total price of the conveyance, which amounted to $62,670.52, the Pettrys would reimburse the Pruitts for any difference between that figure and the selling price obtained by the Buyers. However, the second paragraph of the agreement specifically limited the Pettrys’ liability to “payment from the proceeds of an outstanding lawsuit against” the insurance company. Thus there would never be any liability until there had been some payment from proceeds of insurance claims. The agreement is silent as to whether “within the period of one year” refers to the one year following execution of the agreement, which was March 30, 1976, or some other beginning date. Apparently the trial court construed the agreement as running from the date of realization of proceeds of litigation with the insurance company. The settlement by the Bank and the Pruitts, with the insurance company was on May 30, 1978. The Pruitts subsequently sold the property to a third party on September 27, 1978, which was beyond a year from the execution of the Real Estate Closing Statement and Agreement, but within a year of the settlement with the insurance company and receipt of the settlement proceeds of $31,000.50. It is not overlooked that the agreement referred to the proceeds of the Pettrys’ “outstanding lawsuit against the insurance company” and that there were separate suits by the Bank and the Pruitts on one hand and the Pettrys on the other. The Pettrys, in a jury trial, recovered $10,-874.68 from the insurance company. The stipulation of facts does not state the date of this recovery, but it is obviously subsequent to the dates of events heretofore mentioned.
The sums received by or for the benefit of the Pruitts, whether for costs, attorney’s fees, or otherwise, are well within the amount agreed to be reimbursed under the *1118 agreement referred to, if the time limitation had not expired.
The Pettrys are seeking to invoke the aid of a court of equity in asserting a right to subrogation to funds received by the Bank, the imposition of a constructive trust, and an accounting.
In view of all of the equities involved, the trial judge appears to have applied correct reasoning' and come to an appropriate conclusion. The construction of the agreement to the effect that the one year limitation did not begin to run until there had been some recovery of insurance proceeds is reasonable considering all of the relationships of the parties and the posture of their financial involvements and commitments. It was the efforts of the Bank and the Pruitts which induced the settlement by the insurance company and they incurred expenses and attorney fees in the process. The Pruitts paid the Bank $5,547.38 to apply on the mortgage, which at the time of the fire would have been included within the coverage for the bank mortgagee under the policy. From these and other circumstances the trial court is shown to have exercised a sound judicial discretion and to have applied equitable considerations in rendering its judgment herein.
AFFIRMED.
ROBERT P. SMITH, C. J., MILLS, J., and WILLIS, BEN C., Associate Judge, concur.

. Although the Pruitts held a second mortgage on the property at the time the loss occurred, they were not named as loss payable mortgagees in the contract of insurance.